SHOWBOAT MARINA CASINO PARTNERSHIP, Harrah's East Chicago, Harrah's Operating Company Inc., and the City of East Chicago, Indiana for and on behalf of Department of Redevelopment, Appellants–Defendants,

v.

TONN & BLANK CONSTRUCTION, a Division of Alverno Construction Corporation, Appellee–Plaintiff.

No. 45A03–0301–CV–3.

Court of Appeals of Indiana.

June 26, 2003.

Harold Gus Hagberg, Hagberg, Mullen & Latulip, Schererville, IN, Ann C. Chalstrom (Pro Hac Vice), Clausen Miller P.C., Chicago, IL, Attorneys for Appellants.

Terrence L. Brookie, Julia Blackwell Gelinas, Lucy R. Dollens, Locke Reynolds LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Showboat Marina Casino Partnership, et al. ("Showboat") appeals the trial court's denial of its motion to compel arbitration and stay litigation in favor of Tonn & Blank, the general construction contractor for the construction of Harrah's East Chicago Hotel ("the Project"). On appeal, Showboat argues that the trial court erroneously denied and enjoined arbitration, claiming that the construction agreement ("the Agreement") mandates arbitration in the case of a dispute involving the Agreement.

We affirm.[1]

### FACTS AND PROCEDURAL HISTORY

On or about August 14, 2000, Showboat and Tonn & Blank entered into a contract whereby Tonn & Blank agreed to perform certain construction work for the Project. The Agreement was later amended by several change orders, one of which effectively raised the guaranteed maximum price from $1,452,028.00 to $32,747,972.00.

On June 25, 2002, Tonn & Blank filed a complaint against Showboat to foreclose its mechanic's lien, alleging breach of contract and unjust enrichment. On September 30, 2002, in response to the complaint, Showboat filed a motion to compel arbitration arising from a dispute concerning cost overruns and payments involving Tonn & Blank's construction of the Project. It

---

1. Given our decision handed down today, we hereby deny the request for oral argument in this case.

asserted that the Agreement contained a mandatory arbitration clause that had not been followed. The Agreement's arbitration clause reads in its entirety as follows:

### Section 26.5  Dispute Resolution

Should the Parties to this Agreement have any dispute as to any term, covenant or condition of this Agreement, the Parties agree to meet in good faith and attempt to resolve such dispute. If such informal resolution does not occur, then either party *may institute an arbitration* as provided below. *Any and all of said disputes arising out of this Agreement, and/or the Project shall be decided by a court of competent jurisdiction, within the State of Indiana, with the prevailing party in any action being entitled to full reimbursement of all it's reasonable attorney fees and costs.*

If a dispute arises out of or relates to this Agreement, including any dispute about the existence of a breach of this Agreement, and if the dispute cannot be settled through direct discussions, the parties agree to attempt to settle the dispute in an amicable manner by mediation administered by the American Arbitration Association under its Commercial Mediation Rules. Such mediation must occur within sixty (60) days after a party's request for mediation. Thereafter, any unresolved controversy or claim *shall be settled by arbitration* administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Any arbitration brought under the terms of this Agreement shall be conducted in the following manner: Contractor shall appoint one person as arbitrator and Owner shall appoint one person as arbitrator. The two arbitrators so chosen shall select a third impartial arbitrator within ten (10) days of the date on which the second arbitrator is selected. If the arbitrators selected by the parties are unable or fail to agree upon the third arbitrator, such arbitrator shall be selected by the American Arbitration Association. The three arbitrators shall determine all questions presented to them by majority vote. The decision of a majority of the arbitrators shall be final and conclusive on the parties hereto.

*Appellants' Appendix* at 155–56 (emphasis added).

After a hearing, the trial court denied the motion to compel arbitration and stay the trial court proceedings. Showboat appeals from this order.

### DISCUSSION AND DECISION

■ Showboat appeals the trial court's denial of its motion to compel arbitration and stay litigation.

■ Our standard of review in this case is de novo. *See Mislenkov v. Accurate Metal Detinning, Inc.*, 743 N.E.2d 286, 290 (Ind.Ct.App.2001) (when reviewing the trial court's interpretation of a contract, we view the contract in same manner as trial court). The court should attempt to determine the intent of the parties at the time the contract was made by examining the language used to express their rights and duties. *Id.* Words used in a contract are to be given their usual and common meaning unless, from the contract and the subject matter thereof, it is clear that some other meaning was intended. *Id.* Words, phrases, sentences, paragraphs, and sections of a contract cannot be read alone. *Id.* The entire contract must be read together and given meaning, if possible. *Id.*

■ Under Indiana contract law, the party seeking to compel arbitration has the burden of demonstrating the existence

of an enforceable arbitration agreement. *Wilson Fertilizer & Grain v. ADM Milling Co.,* 654 N.E.2d 848, 849 (Ind.Ct.App. 1995), *trans. denied* (1996). When determining whether the parties have agreed to arbitrate a dispute, we apply ordinary contract principles governed by state law. *Mislenkov,* 743 N.E.2d at 289 (citing *St. John Sanitary Dist. v. Town of Schererville,* 621 N.E.2d 1160, 1162 (Ind.Ct.App. 1993)). In addition, "[w]hen construing arbitration agreements, every doubt is to be resolved in favor of arbitration," and the "parties are bound to arbitrate all matters, not explicitly excluded, that reasonably fit within the language used." *Id.* (citing *St. John Sanitary Dist.,* 621 N.E.2d at 1162). *See also Indiana CPA Society v. Gomembers, Inc.,* 777 N.E.2d 747 (Ind.Ct.App. 2002) (Indiana recognizes strong policy of enforcing valid arbitration agreements).

■ However, parties are only bound to arbitrate those issues that by clear language they have agreed to arbitrate; arbitration agreements will not be extended by construction or implication. *Mislenkov,* 743 N.E.2d at 289; *St. John Sanitary Dist.,* 621 N.E.2d at 1161 (arbitration is a matter of contract, and party cannot be required to submit to arbitration any dispute which he or she has not agreed to submit).

The trial court in its December 3, 2002 order concluded in pertinent part as follows:

3. The agreement containing the language in this case was prepared by Defendant, SHOWBOAT MARINA CASINO PARTNERSHIP. An examination of the specific language of the contract shows that either party "may" institute arbitration, but it further goes on to indicate that any and all disputes arising out of the agreement "shall" be decided by a court of competent jurisdiction within the State of Indiana. It appears that the arbitration language is permissive, but the language regarding disputes under the agreement is mandatory in that it provides for those disputes to be decided by a court of competent jurisdiction.

4. The Court concludes that the following principles should be applied to the agreement at hand, namely: ". . . . The test for determining the existence of an ambiguity is whether reasonably intelligent persons could come to different conclusions as to the contract's meaning . . . Any ambiguities in a contract are to be strictly construed against the party who employed the language and who prepared the contract." *Ruff v. Charter Behavioral Health System of Northwest Indiana, Inc.,* 699 N.E.2d 1171, 1176 (Ind.Ct.App.1998), citations omitted.

5. Accordingly, the Court concludes that the contractual language is ambiguous to the extent that two (2) contradictory methods of resolving any disputes under the contract are set forth therein. In determining which of these methods of resolution should be employed, the language does indicate that arbitration "may" be instituted while disputes under the agreement "shall" be decided by a court of competent jurisdiction.

6. In order to prevent resort to the courts, the agreement must not only provide for arbitration but make such arbitration a condition precedent to the right of action in court. *Shahan v. Brinegar,* 181 Ind.App. 39, 390 N.E.2d 1036, 1040 (1979). Such is not the case here.

*Appellants' Appendix* at 2–3.

Here, the Agreement expressly states that either party *"may"* institute arbitration if an informal resolution does not resolve the dispute. *Appellants' Appendix* at 155 (emphasis added). In turn and most peculiarly, the Agreement expressly

states: "Any and all of said disputes arising out of this Agreement, and/or Project *shall* be decided by a court of competent jurisdiction, within the State of Indiana[.]" *Appellants' Appendix* at 155 (emphasis added). Finally, the Agreement states that any controversy which is unresolved following mediation "shall be settled by arbitration." *Appellants' Appendix* at 155. The Agreement contains a definite ambiguity, and we agree with the trial court that such ambiguity is to be construed against Showboat, the drafter of the contract.

Accordingly, the trial court did not err when it denied Showboat's motion seeking an order compelling Tonn & Blank to submit to arbitration, and we therefore affirm the trial court's order.

Affirmed.

MATTINGLY–MAY and MATHIAS, JJ., concur.